NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JANET FREAY | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | **OPINION** |
| v. | Civil Action No. 07-cv-269 (DMC) |
| IM WILSON INC., a Pennsylvania Corporation, d.b.a. GRISHKO INC., DONALD ASHLEY, and JOHN DOES 1-5, CORPORATION ABC 1-5, | |
| Defendants. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Defendant IM Wilson Inc., d/b/a Grishko Inc. ("Grishko") and joined by Defendant Donald Ashley ("Ashley") pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Counts I, IV and V of Plaintiff's Complaint. Pursuant to Rule 78 of the Federal Rules of Civil Procedure no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendants' motion to dismiss Counts I, IV and V is **granted**.

**I.    BACKGROUND**

Plaintiff Janet Freay ("Freay") a New Jersey resident, brought the instant action against her former employer, Grishko, a Pennsylvania corporation owned by Ashley, a resident of Pennsylvania. Compl. ¶4-6. In her Complaint, Freay alleges five causes action against Defendants: fraud in the inducement (Count I), breach of contract (Count II), unjust enrichment (Count III), breach of the implied covenant of good faith and fair dealing (Count IV), and detrimental reliance (Count V).

Prior to her employment with Grishko, Plaintiff was employed by Danskin, Inc - a direct competitor of Grishko. Compl. ¶¶7-8. While still employed by Danskin, Grishko and Ashley allegedly "induced, lured and actively pursued Freay's services." Compl. ¶7. Specifically, Grishko sought to hire Plaintiff as their Vice President of Sales and promised her a salary of $186,000 per year with incentives. Compl. ¶¶11-12. Plaintiff alleges that Grishko had "no intent on retaining Freay's services" but rather, sought to hire her so that (1) Plaintiff would provide training and a written outline as to how to effectively run a sales department; and (2) Grishko could gain access to a list of Plaintiff's Danskin's clients and their contact information. Compl. ¶¶10, 14-15. Further, Plaintiff alleges that "[f]rom the first day of employment, Ashley criticized and pressured Freay for no reason other than to set up her eventual termination." Compl. ¶13. Ultimately, after only four weeks of employment with Grishko, Plaintiff was fired on June 2, 2006.

## II.  STANDARD OF REVIEW

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. See Warth v. Seldin, 422 U.S. 490, 501 (1975); Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir.1998). If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any set of facts which could prove consistent with the allegations," a court shall dismiss a complaint for failure to state a claim. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

Additionally, the Supreme Court recently clarified the Rule 12(b)(6) standard in Bell Atlantic Corporation v. Twombly. 127 S.Ct. 1955 (2007). Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41, (1957), that "a complaint should not be dismissed for

failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief." Id. at 1968 (citing Conley, 355 U.S. at 45-46). Instead, the Supreme Court instructed that "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965.

### III. CHOICE OF LAW

Pursuant to New Jersey's[1] governmental-interest analysis for choice of law decisions, this Court must first "determine whether a conflict exists between the law of the interested states." Veazey v. Doremus, 103 N.J. 244, 248 (1986); see also Gantes v. Kason Corp., 145 N.J. 478, 484 (1996). Such conflicts are to be determined on an "issue-by-issue basis." Veazey, 103 N.J. at 248. Here, Plaintiff argues that Defendants present a "false conflict" because there is no "distinction in the laws" between New Jersey and Pennsylvania. Pl. Opp'n Br. at 8 (citing Grossman v. Club Med Sales, Inc., 273 N.J. Super. 42, 49 (App. Div. 1994)). Contrary to Plaintiffs' position, the Court is satisfied that an actual conflict exists between the laws of New Jersey and Pennsylvania as to material issues. First, regarding Plaintiff's fraud in the inducement claim, Pennsylvania recognizes the "gist of the action" doctrine and New Jersey does not. Second, as to Plaintiff's breach of the implied covenant of good faith and fair dealing claim, Pennsylvania does not recognize this as an independent claim whereas New Jersey does. Regarding both these issues, this Court could reach a different conclusion as to the viability of Plaintiff's claims depending upon which state's law is applied. Accordingly, there is no "false conflict" of law.

Second, the Court must determine which state - New Jersey or Pennsylvania - has the most

---

[1] The parties agree that New Jersey choice of law rules apply in this case. See Defs. Br. at 4; Pl. Opp'n Br. at 5.

significant interest in the litigation. See Fu v. Fu, 160 N.J. 108, 119 (1999); Veazey, 103 N.J. at 248. Several factors ought to be considered in making this determination including *inter alia*: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties, and (4) the place where the relationship, if any, between the parties is centered. See Fu, 160 N.J. at 122-126 (citing *Restatement (2d) of Conflict of Laws*). Specifically, in regard to contract disputes, the Court should consider the following factors.

> (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location and subject matter of the contract; and (e) the domicil, residence . . . place of incorporation and place of business of the parties.

*Restatement (2d) Conflicts of Law* § 188(2) (2006). See also NL Indus., Inc. v. Commercial Union Ins. Co., 65 F.3d 314, 316 (3d Cir. 1995); Gilbert Spruance Co. v. PA Mfr. Assoc. Ins. Co., 134 N.J. 96, 103 (1993).

In this case, the majority of the relevant factors weigh in favor of applying Pennsylvania law. New Jersey, the state where the Plaintiff resides, is also where Plaintiff allegedly suffered injuries as a result of Defendants' conduct. Pennsylvania, however, is where most of the incidents giving rise to this action occurred. Defendant Grishko is based in Pennsylvania and predominantly conducts its business from Pennsylvania. Even more importantly, Plaintiff's contract claims are based on a contract that was prepared and negotiated in Pennsylvania. In other words, the "place of contracting" is Pennsylvania. Further, Plaintiff contracted to work for a Pennsylvania corporation. Additionally, the alleged wrongful conduct took place by Grishko, a Pennsylvania entity, acting in Pennsylvania. Accordingly, it is the finding of this Court that Pennsylvania law governs this dispute.

**IV.    DISCUSSION**

    **A.    Count I: Fraud in the Inducement**

Plaintiff's Count I ("Fraud in the Inducement") alleges that Defendants fraudulently induced Plaintiff to enter into an employment contract. This claim is made in addition to Plaintiff's breach of contract claim.

Pennsylvania's "gist of the action" doctrine precludes a tort claim where "the tort claim essentially duplicates a breach of contract claim or the success [of the tort claim] is wholly dependent on the terms of a contract." eToll, Inc. v. Elias/Savion Adver., Inc., 811 A.2d 10, 19 (Pa. Super. 2002); see also Iron Mountain Sec. Storage Corp. v. Am. Specialty Foods, Inc., 457 F. Supp. 1158, 1165 (E.D. Pa. 1978). In other words, "[t]o be construed as a tort action, the wrong ascribed to the defendant must be the gist of the action with the contract being collateral." Galdieri v. Monsanto Co., 245 F. Supp. 2d 636, 650 (E.D. Pa. 2002) (quoting Phico Ins. Co. v. Presbyterian Med. Servs. Corp., 444 Pa. Super. 221, 229 (Pa. Super. 1995)). Thus, a plaintiff's "breach of contract claim cannot be 'bootstrapped' into a fraud claim merely by adding the words fraudulently induced or alleging the contracting parties never intended to perform." Id.

Pennsylvania courts and federal courts applying Pennsylvania law have reasoned that the "gist of the action" doctrine is essential to preserving the distinction between tort and contract claims. Specifically, "[t]he important difference between contract and tort actions is that the latter lie from duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus." Air Prods. & Chems., Inc. v. Eaton Metal Prods., Co., 256 F. Supp.

2d 329, 341 (E.D. Pa. 2003) (quoting <u>Redevelopment Auth. v. Int'l Ins. Co.</u>, 454 Pa. Super. 374, 392 (Pa. Super. 1996) (en banc)). Thus, the Eastern District of Pennsylvania has recognized that fraud in the inducement claims are not necessarily barred by the "gist of the action" doctrine because they are "much more likely to present cases in which a social policy against the fraud, external to the contractual obligations of the parties, exists." <u>Id.</u> (citing <u>Foster v. Northwestern Mut. Life</u>, No. 02-2211, 2002 WL 31991114, at **2-4 (E.D. Pa. July 25, 2002)). For example, alleged fraud in the inducement of an employment contract may "implicate the 'larger social policies' of a tort action (e.g., society's desire to avoid fraudulent inducement in the employment context.)" <u>Foster</u>, 2002 WL 31991114 at *3.

In this case, Plaintiff contends that her fraud in the inducement claim is viable based both on Defendants' pre-contractual fraud and their fraud in the performance of the contract. Plaintiff alleges that "[t]he 'fraud' in the matter at bar stems from Ashley's pre-contractual misrepresentations, the misrepresentations during the employment tenure, and the clear lack of honesty in retaining Freay's services as agreed." Pl. Opp'n Br. at 11. First, as explained above, Plaintiff's allegations regarding the fraud that occurred "during her employment tenure" are clearly barred by the "gist of the action" doctrine. This alleged fraud is governed by the parties' contract. Thus, Plaintiff's recovery on this contract stems not from a duty imposed by social policy but rather, from duties imposed by the parties' mutual agreement. <u>See</u> <u>Air Prods. & Chems., Inc.</u>, 256 F. Supp. 2d at 341. Second, Plaintiffs' allegations that Defendants' pre-contractual misrepresentations also fail to support a fraud in the inducement claim. The Complaint fails to identify any pre-contractual representations which were, in fact, misrepresentations. As promised, Defendants hired Plaintiff as Vice President of Sales

at Grishko and Defendants paid Plaintiff the salary they agreed upon. See Compl. ¶¶11, 12. Plaintiff does not identify any other representations made by Defendants during their pre-contractual relationship which proved to be untrue. The remainder of Plaintiff's allegations regarding Defendants' "fraud" occurred during the performance of the contract. Such claims are dependent on the terms of the contract. Plaintiff may not "bootstrap" her contract claim into a fraud claim in this manner. Accordingly, it is the finding of this Court that Plaintiff's Count I is barred by Pennsylvania's "gist of the action" doctrine.

### B.     Count IV: Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiff's Count IV ("Breach of Implied Covenant of Good Faith and Fair Dealing") is not a recognized claim under Pennsylvania law. See Blue Mountain Mushroom Co., Inc. v. Monterey Mushroom, Inc., 246 F. Supp. 2d 394, 400 (E.D. Pa. 2002) (citing *inter alia* Drysdale v. Woerth, No. 98-3090, 1998 WL 966020, at *3 (E.D. Pa. Nov. 18, 1998)). Instead, Pennsylvania law requires that breach of the covenant of good faith and fair dealing be brought as a breach of contract action. See JHE, Inc. v. Se. Pa. Transp. Auth., No. 1790, Nov. Term 2001, 2002 WL 1018941, at *6-7 (Pa. Com. Pl. May 17, 2002). Accordingly, Plaintiff's Count IV must be dismissed.

### C.     Count V: Detrimental Reliance

Plaintiff's Count V ("Detrimental Reliance") is not a recognized claim under Pennsylvania law. See Jahanshahi v. Centura Dev. Co., Inc., 816 A.2d 1179, 1186 (Pa. Super. 2003) (holding that detrimental reliance is not a separate cause of action but a component of a fraud claim). In her Opposition Brief, Plaintiff characterizes Count V as a claim for "Detrimental Reliance/Promissory Estoppel." Pl. Opp'n Br. at 16. Even viewing Plaintiff's claim as a claim for promissory estoppel,

Count V must still be dismissed. Pursuant to Pennsylvania law, a claim for promissory estoppel is viable only where "the formal requirements of contract formation have not been satisfied and where justice would be served by enforcing a promise." Carlson v. Arnot-Ogden Mem'l. Hosp., 918 F.2d 411, 416 (3d Cir. 1990). Here, the parties do not dispute that they formed an enforceable contract. In fact, Plaintiff seeks relief based on an alleged breach of the parties' contract. Accordingly, Plaintiff fails to state a claim for promissory estoppel where the validity of the contract is not in question.

**V.    CONCLUSION**

For the reasons stated, it is the finding of this Court that Defendants' motion to dismiss Counts I, IV and V is **granted**. An appropriate Order accompanies this Opinion.

        S/ Dennis M. Cavanaugh
        Dennis M. Cavanaugh, U.S.D.J.

Date:       August   6  , 2007
Orig.:      Clerk
cc:         Counsel of Record
            The Honorable Mark Falk, U.S.M.J.
            File